# O'SHEA PARTNERS LLP

90 PARK AVENUE
20th FLOOR
NEW YORK, NEW YORK 10016

SEAN F. O'SHEA
MICHAEL E. PETRELLA
—
HARLAN J. PROTASS
MARC D. FEINGOLD
JONATHAN R. ALTSCHULER
MAUREEN MORAN
JULIE O'SHEA

(212) 682-4426
Fax (212) 682-4437
www.osheapartners.com

**MEMO ENDORSED**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/08

March 4, 2008

*MAR 0 5 2008
CHAMBERS OF
P. KEVIN CASTEL*

**BY FEDEX**

Hon. P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **Luminent Mortgage Capital, Inc. et al. v. HSBC Securities (USA) Inc.**
            **07 Civ. 9340 (PKC)**

Your Honor:

    This office represents Plaintiffs in the above-captioned matter, and together with the undersigned counsel for Defendant-Counterclaimant, we submit this joint letter pursuant to the Court's order dated February 4, 2008 directing the parties to meet and confer in an attempt to resolve certain issues relating to discovery in this action.

    The specific issue requiring judicial resolution at this time concerns the Stipulation and Order Governing Confidential Material (the "Confidentiality Stipulation"). As indicated in my letter dated February 14, the parties have been cooperating diligently in trying to fully resolve their outstanding disagreements concerning the Confidentiality Stipulation, beginning with a face-to-face meeting that lasted several hours. Unfortunately, while the parties have reached agreement on nearly the entire document, one issue remains unresolved on which we request the Court's limited intervention. This letter identifies the area of disagreement, presents the language proposed by each party and contains each party's argument in support of its proposed language. The parties are still conferring regarding their disagreements with respect to other discovery issues and will submit a separate joint letter to the Court with respect to any they are unable to resolve consensually.

### A. Provision of "Confidential" Documents to Potential Non-party Trial or Deposition Witnesses (draft confidentiality stipulation, ¶10(d))

Plaintiffs' Proposed Language:

"10. Subject to the terms, conditions and restrictions of this Stipulation, and except upon prior written consent of the Producing Party or by Order of this Court, Discovery Material designated as Confidential Discovery Material, and all copies, excerpts or summaries thereof, and any information contained therein, shall be disclosed, revealed or otherwise made known only to the following persons: . . . and (d) potential non-party trial or deposition witnesses, provided that counsel has a good faith belief that such disclosure is necessary to interview or prepare that potential witness, and such person(s) is provided with a copy of this Stipulation and is urged to sign an acknowledgement in the form attached hereto as Exhibit A. In the event a witness refuses to sign such acknowledgment, such witness shall be advised that some or all of the documents to be shown are confidential; urged to keep such documents (and the contents thereof) confidential and not disclose them or their contents to any third parties); and shown such documents only in person and not be permitted to keep a copy of the documents."

Defendant's Proposed Language

"10. Subject to the terms, conditions and restrictions of this Stipulation, and except upon prior written consent of the Producing Party or by Order of this Court, Discovery Material designated as Confidential Discovery Material, and all copies, excerpts or summaries thereof, and any information contained therein, shall be disclosed, revealed or otherwise made known only to the following persons: [...] (d) non-party trial or non-party deposition witnesses, not more than thirty (30) days before the scheduled testimony, provided that counsel has a good faith belief that such disclosure is necessary to the preparation of that witness, and provided that such person(s) signs and delivers to such counsel an acknowledgement in the form attached hereto as Exhibit A."

### Plaintiffs' Position on the Issue

Both parties agree that, under Paragraph 10(d) of the Confidentiality Stipulation, a party should be permitted to provide copies of documents designated as "Confidential" to a non-party, but disagree as to the attendant conditions. Plaintiffs seek to condition a party's provision of "Confidential" documents to a non-party on that person being a potential witness, and on a party first urging such potential witness to sign an acknowledgment in the form of Exhibit A to the Confidentiality Stipulation. (Exhibit A's form acknowledgment requires the witness to agree to be bound by the terms of the stipulation). In the event a potential non-party witness refuses to sign Exhibit A, upon advising the witness that some or all of the documents to be shown are confidential, and urging the witness to keep them confidential, counsel may show the documents to the witness in person, but may not permit the witness to keep a copy of such documents. Defendant, however, objects to the mere showing of "Confidential" documents to a non-party if that person refuses to sign and deliver the Exhibit A acknowledgment, or apparently if that person has not actually been noticed to testify as a witness at trial or at a deposition. Defendant

further requires that, in any event, no "Confidential" documents be shown to the witness prior to thirty days before "scheduled testimony."

*Plaintiffs' Indifference to a Confidentiality Stipulation and Defendant's Attempt to Impose the Stipulation Involuntarily By Blanket Protective Order.* By way of background, Plaintiffs have no particular interest in a confidentiality agreement. With each passing year, large corporations treat such agreements more as a birthright than what they are – a concession from an adversary interested in moving the case forward rather than engaging in a protracted fight over "confidentiality." Nevertheless, large financial institutions routinely stonewall document discovery until they have extorted the most airtight agreement possible that maximizes their chances of concealing their misdeeds from the public view. They do so despite the fact that all but a minuscule fraction of the documents ultimately designated "confidential" pursuant to such agreements would not even remotely qualify for a protective order. In brief, Plaintiffs take a dim view of confidentiality agreements, and the manner in which they are consistently used to delay and frustrate the discovery process.[1] They are not, contrary to Defendant's claim below, trying to "use the threat of revealing sensitive business information as a sword during litigation."

Plaintiffs' draft stipulation (attached hereto as Exhibit 1) represents negotiated modifications of a form stipulation first proposed by Defendant. That form agreement was by far the most unnecessarily bloated and convoluted confidentiality stipulation Plaintiffs' counsel have ever seen. It is literally painful to read. After suffering through the first six pages, the reader is compelled to look to see how many pages remain, and marvel at what could possibly require another nine. When Plaintiffs proposed a more streamlined document of one-third the length and complexity, Defendant rejected it. Plaintiffs have now spent hours of time and thousands of dollars in legal fees poring over Defendant's indenture. Now that that time and those resources have been squandered, one issue still remains. Plaintiffs believe they have compromised enough and endured enough on this ancillary issue, that their proposed language should be adopted in all cases, and that the parties should (at long last) move on to the merits of the case.

Plaintiffs have made clear to Defendant that they are willing to indulge HSBC with a confidentiality stipulation, **as long as it does not impinge upon Plaintiffs' ability to prepare their case**. If that occurs, Plaintiffs would rather have no confidentiality stipulation at all. The disputed language here, which seeks to drastically restrict Plaintiffs' ability to interview potential non-party witnesses, crosses the line that Plaintiffs have clearly stated from the outset that they would not cross. Cognizant of Plaintiffs' position, Defendant has changed the disputed

---

[1] After deciding on its own to produce certain documents with its *Fed. R. Civ. P.* 26(a) initial disclosures – an act Plaintiffs do not believe the parties were required to do and were not expecting Defendant to do – Defendant now complains disingenuously that Plaintiffs have not yet produced any documents in this action other than a document relating to Plaintiffs' damages figure which was disclosed in connection with their *Fed. R. Civ. P.* 26(a) initial disclosures. In fact, Plaintiffs were prepared to begin producing documents on February 1 before Defendant dishonored the parties' agreement to begin production while the confidentiality stipulation was being negotiated (which breach resulted in Plaintiffs seeking the Court's intervention, all as indicated in Plaintiffs' February 1 letter to the Court). Indeed, but for Defendant's refusal to properly address the issue of production of electronic documents, Plaintiffs were prepared, and had committed, to produce a substantial production by yesterday. Defendant claims (incorrectly) that the parties' interim agreement to produce documents applied only to the production of documents in connection with the service of the parties' initial disclosures. As Exhibit A to Plaintiffs' February 1 letter to the Court demonstrates, the parties' agreement contained no such qualification.

3

document from a stipulation and order – and there is no doubt that the entire document (save the disputed provision) is purely the product of mutual consent – to just an order. In doing so, Defendant, in effect, asks this Court to force Plaintiffs to stipulate – something that courts are wisely loathe to do. *See Norris v. Ryder Truck Rental*, No. 84 Civ. 7331-CSH, 1985 WL 464, *2 (S.D.N.Y. Mar. 26, 1985) (regarding counsel's urging of a stipulation to discontinue an action, court notes "I encourage such a stipulation, as it would obviously avoid duplicate effort and expense on the part of the parties, counsel, and the courts. But I cannot compel such a stipulation . . . ."). As described below, Defendant's proposed language will result in a severe restriction on Plaintiffs' ability to effectively litigate – a matter Plaintiffs view as too important to stipulate away.

Accordingly, the initial response to Defendant's hyperbolic argument below that Plaintiffs' position on Section 10(d) undermines the very purpose of a confidentiality agreement is simply this – Plaintiffs never wanted a confidentiality stipulation or order in the first instance, and seriously doubt that any of the documents produced by HSBC in this case will be truly "confidential" in the sense that they would warrant a protective order under *Fed. R. Civ. P.* 26(c). It should therefore come as no surprise to Defendant that Plaintiffs' paramount concern is the freedom to prosecute their case, not comparatively frivolous protections for so-called "confidential" documents. In short, if Plaintiffs' choice is between Defendant's Section 10(d) and nothing, Plaintiffs choose nothing.

Furthermore, the simple fact is that there is no legal basis for imposing a blanket protective order on this case. A party seeking a protective order has the burden of proof. *Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2d Cir. 1981). That party must show that disclosure of the information will cause a "clearly defined and very serious injury." *United States v. IBM Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975). Thus, when a party asserts that discovery will cause competitive injury because of the revelation of trade secrets, it cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure. *IBM Corp.*, 67 F.R.D. at 46-47; *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 22-23 (S.D.N.Y. 1971). Defendant seeks to shift the burden onto Plaintiffs, and asks the Court to assume, without a shred of evidence, that it will be able to meet these exacting standards in every instance.

Additionally, the openness of federal judicial proceedings has been held to extend to the discovery process. *See Koster v. Chase Manhattan Bank*, 93 F.R.D. 471 (S.D.N.Y. 1982) (noting that "litigants and their lawyers have a First Amendment interest in disseminating information procured through discovery."). And if Plaintiffs believe it is important to show potential witnesses documents produced by Defendant, it will because those documents are highly relevant to the case, and likely to be used at trial. That being the case, Defendant's privacy interest is insubstantial. *See Grogan v. Osborne*, 1988 WL 49192 (S.D.N.Y. May 5, 1988) (denying blanket protective order in part because "this information is highly relevant to the issues in the lawsuit and will be revealed at a trial on the merits, assuming that there is one. Thus, the defendant['s] privacy interest in the information is significantly reduced by the likelihood that the information will eventually be disclosed."). Therefore, Defendant's request that the Court essentially force the stipulation down Plaintiffs' throat is both legally baseless and improper.

4

*Inability to Interview Potential Witnesses (as Opposed to Witnesses Already Noticed for Deposition or Trial).* As a preliminary matter, Defendant's proposed language excludes *potential* witnesses that have not yet been noticed for a deposition or subpoenaed for trial. As the Court is surely aware, parties to confidentiality agreements typically mark the majority, if not all of their respective productions "Confidential," and therefore Defendant's language effectively bars Plaintiffs from using any of Defendant's documents in connection with an investigation. Thus, Defendant's restriction clearly interferes with the ability to interview non-party witnesses to build and develop a case – an activity that is at the very heart of the litigation process. And, a requirement that counsel must first notice a non-party for a deposition or trial before interviewing that person, is improper as it, in effect, encroaches on information plainly protected by the attorney-work product doctrine by requiring counsel to disclose to an adversary which potential non-party witnesses it chooses to speak with.

Defendant emphasizes that the documents that Plaintiffs seek to show potential witnesses are *their confidential documents*. Not quite. They are HSBC documents that are required by law to be turned over to Plaintiffs in a public judicial proceeding. Further, they are to be treated as "confidential" only because Plaintiffs have agreed to allow Defendant to designate them as such.[2] Accordingly, Defendant's suggestion that it somehow has a choice as to whether to produce its purported "confidential" documents is fundamentally flawed. Finally, Defendant argues that its proposed limitations are insignificant because they only prevent Plaintiffs from showing potential witnesses HSBC's documents. That argument assumes (without support and contrary to Plaintiffs' expectations) that HSBC's documents will not be the most critical documents in the case from Plaintiffs' perspective.

Defendant also suggests that Plaintiffs seek to show its allegedly "confidential" documents to their "competitors." At this early stage, Plaintiffs have no idea what non-party witnesses they might seek to interview. However, even if they did seek to interview employees of HSBC's competitors, and even if those witnesses refused to execute Exhibit A, under Plaintiffs' proposed language those potential witnesses would still be admonished that the documents were confidential, and would not be allowed to retain copies of them. Under those circumstances, there is no practical risk of actual harm to Defendant. As an alternative, however, Plaintiffs would be willing to consider a provision that required them to inform Defendant if any potential witness orally refused to keep documents confidential (*i.e.*, gave some indication that they planned to use or disclose the material to others), and to refrain from showing any that witness Defendant's "confidential" documents until the parties either came to an agreement on how to proceed, or the Court issued a ruling.

*Requirement That Exhibit A Must Be Signed.* Next, as noted above, during discovery counsel may wish to conduct interviews with potential non-party witnesses and, as part of those interviews, show those witnesses documents marked "Confidential" by another party. Such

---

[2] Although Defendant contests this point below, it has advanced no evidence whatsoever that any of the documents it has or will produce in this case are sufficiently sensitive to warrant a protective order pursuant to *Fed. R. Civ. P.* 26(c). Therefore, its conclusory assumption that its documents are "confidential" is entitled to no weight.

neutral witnesses with no stake in the outcome are often the most critical, but also the most skittish and reluctant. It is therefore likely that potential non-party witnesses will refuse to sign the Exhibit A acknowledgment – even if they are perfectly willing to keep a document and its contents confidential – either because they do not understand it, because they have no incentive to do so, or because they are unwilling to incur any legal obligations. Indeed, the idea that any remotely disinterested party would waste their time poring over the fifteen-page indenture attached to this submission, and then sign a paper agreeing to adhere to its terms, is fanciful.

Plaintiffs solve this quandary by requiring counsel to advise witnesses that will not sign Exhibit A that documents to be reviewed are confidential, and should not be disclosed to others. Further, in view of Plaintiffs' restriction that a potential witness who refuses to sign the Exhibit A acknowledgment not be permitted to keep a copy of the "Confidential" documents, the risk of the producing party being harmed by such a person merely seeing such documents is, realistically speaking, nil. Thus, Defendant's demand that all non-party witnesses must sign Exhibit A is an improper intrusion on counsel's ability to freely litigate this action, as it will impede their ability to conduct meaningful interviews with potential witnesses.

Moreover, in view of Paragraph 13 of the Confidentiality Stipulation, Defendant's concerns are not persuasive. That paragraph permits confidential documents to be shown *during a deposition or trial* to a witness who refuses to sign the Exhibit A acknowledgment, using language nearly identical to that proposed by Plaintiffs in Paragraph 10(d). Defendant therefore appears to draw a distinction between witnesses who refuse to sign the acknowledgment at trial or a deposition, and those who refuse to do so during an interview; the former may review the documents, the latter may not. That distinction is an artificial, unjustified one that, again, serves to unnecessarily hand-cuff counsel in their ability to effectively litigate this action on behalf of their clients.

*Defendant's 30-Day Limit*. Lastly, Defendant's desire to impose a 30-day limit on when a party may show a non-party "Confidential" documents is unreasonable (and wholly unnecessary, particularly in situations where a witness actually signs the "Exhibit A" acknowledgment). Imposing time restrictions on when counsel may show documents to a potential non-party witness places a significant burden on counsel's ability to prepare their case, forcing counsel to check the calendar before moving forward on a particular theory or issue. Moreover, the 30-day restriction ignores the fact that counsel may not know until *after* interviewing a non-party witness, and showing that person "Confidential" documents, whether to have that witness testify at all.

### Defendant's Position on the Issue

Perhaps fitting for Plaintiffs who advised Defendant of their lawsuit through a press release rather than through service of the complaint (a tactic they repeated in pending litigation in this district against another financial institution), Plaintiffs take the remarkable position that respecting the confidentiality of sensitive documents they obtain solely through compulsion is a "concession." Plaintiffs' own words are staggering:

> "Defendant emphasizes that the documents that Plaintiffs seek to show potential witnesses are their confidential documents. Not quite. They are HSBC documents that are required by law to be turned over to Plaintiffs in a public judicial proceeding. Further, they are to be treated as "confidential" only because Plaintiffs have agreed to allow Defendant to designate them as such."

Despite Plaintiffs' baseless assertions, HSBC has every right to keep, and takes great measures to keep, its sensitive business documents confidential. The fact that Plaintiffs can pay a filing fee and allege facts sufficient to state a claim, and Defendant therefore has to produce documents regarding those allegations, does not change the fact that those documents remain Defendant's confidential documents.[3]

Plaintiffs' position regarding the paragraph in question is fundamentally at odds with the entire purpose of the confidentiality stipulation, namely to keep confidential documents confidential vis-à-vis third parties. What Plaintiffs seek is the right to show Defendant's confidential documents to any and all third parties — including Defendant's direct competitors, eight of whom Plaintiffs have already subpoenaed — irrespective of whether that third party has actually been noticed as a witness, and without requiring that third party to execute any acknowledgement agreeing to adhere to the confidentiality order and be subject to the Court's jurisdiction for violating that order. In other words, under Plaintiffs' proposal, nothing would bar such a third party from using or disclosing Defendant's confidential information — information that Defendant would never even know was shown to the third party (because Plaintiffs claim that it would violate their work product to reveal to whom they disclosed Defendant's confidential documentation). Plaintiffs, here or in any case, should not be able to use the threat of revealing sensitive business information as a sword during litigation.

Plaintiffs' protestations that they will be unable to prepare their case are makeweights, and far outweighed by a party's right to the protection from disclosure to third parties of confidential materials obtained solely through court process. Under Defendant's proposed Order, Plaintiffs are not hampered in their ability to interview potential witnesses. Subject of course to their ethical obligations, Plaintiffs can interview whomever they want, wherever they want, whenever they want, and can show those witnesses any of Plaintiffs' own documents.

---

[3] Plaintiffs' argument that Defendant is using confidentiality to "stonewall" discovery is audacious to say the least. To date only one party has produced documents — Defendant. Aside from a single, lawyer-created page, Plaintiffs have thus far not produced a single document, despite the indisputable requirements of Rule 26(a)(1)(A) and this Court's December 7, 2007 scheduling order to provide by January 15, 2008, inter alia, "a computation of each category of damages [and] . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered" (emphasis added).

Further, Plaintiffs have resisted Defendant's repeated efforts to commit to a discovery schedule. Plaintiffs' reference to a past agreement to begin production is a red herring. The parties had a prior agreement for Rule 26(a) initial disclosures, which Plaintiffs flouted by failing to produce any documents. Plaintiffs have declined Defendant's repeated offers to start productions immediately under the confidentiality terms to which both parties agree and reserving on those terms still in dispute. Finally, Plaintiffs' reference to electronic production is also a red herring: Defendant has repeatedly stated its willingness to produce electronically in Plaintiffs' requested format, but Plaintiffs have simply ignored Defendant's repeated requests to have a technical meeting to discuss how to accomplish that goal.

With the possible exception of documents that require heightened protection, Plaintiffs can even show Defendant's confidential documents to their own employees. Further, even with respect to third-party witnesses, Defendant has reluctantly agreed that confidential documents can be revealed, <u>provided that</u> the third party is a genuine witness being prepared for testimony (discussed below) and agrees to sign the acknowledgement to adhere to the Court's order.[4] The notion that Plaintiffs cannot even select their witnesses for deposition or trial without first revealing Defendant's confidential documents to those witnesses is, frankly, absurd.

The 30-day limitation has a very logical and reasonable purpose. It is to make sure that a third party — to whom an adversary's confidential documents should be revealed only in rare and necessary circumstances — is truly going to be a witness and thus the confidential documents are being revealed to prepare that witness for potential deposition or trial examination. While Defendant is dubious that counsel should ever have the right to show an adversary's confidential documents to a third party outside of a deposition or trial, since such documents may be revealed during the deposition or at trial, we reluctantly agreed that the witness should have a right to be prepared on those documents, so long as we are confident that the third party is scheduled to be called as a witness and thus that such disclosure is legitimate preparation.[5] To exclude any temporal restriction whatsoever would be to change a narrow exception to allow third-party witness preparation to a broad exception — whereby Plaintiffs could show Defendant's confidential documents to any party regardless of whether that party is to be called as a witness — that undermines the whole notion of the protection of confidentiality in documents reluctantly exchanged by the parties.

Plaintiffs' position that because a third-party witness may be shown confidential documents in a deposition or at trial there should be no restriction on revealing such documents outside of the deposition is a classic slippery slope. Merely because it is impossible to prevent revealing documents in a deposition is not a basis to discard confidentiality entirely with respect to a third party. Moreover, when a third party is shown a confidential document in a deposition, the party producing the confidential material is at least aware of its disclosure. Plaintiffs' proposed paragraph 10(d) would allow Plaintiffs to reveal Defendant's confidential documents to a third party who rejects the Court's order without Defendant even knowing that its confidential documents were ever disclosed. Additionally, given that there are unlikely to be many third-party depositions, and time is preciously used in those depositions, the opportunities for disclosures of confidential documents are as limited as can be. Allowing parties to show any confidential document produced by an adversary to any third party (including competitors), at any place, at any time, without any requirement of an acknowledgement and without revealing the disclosure to the producing party is so much broader that the comparison is simply ridiculous.

Plaintiffs have been negotiating for months, presumably in good faith, toward a confidentiality stipulation. After all of this negotiation, the parties have reached agreement on all provisions of a confidentiality stipulation except the one issue currently before the Court. Astonishingly, despite these months of negotiation — and despite the fact that it was Plaintiffs

---

[4] If the third party is unwilling to adhere to the Court's order, Defendant would certainly have a reasonable concern about the disclosure of Defendant's confidential documents to that third party.

[5] Defendant has suggested reasonable alternatives, such as modifying the 30-day limitation by substituting a requirement that notice of the deposition has been served, which would address Plaintiffs' timing concerns while still ensuring that the third party is a bona fide witness. Plaintiffs have rejected all such proposals.

who appealed to the Court for resolution — Plaintiffs informed Defendant for the first time last week that, if the Court agreed with Defendant's language, Plaintiffs would in fact refuse to sign such stipulation.[6] Defendant suggested to Plaintiffs their choice of either both parties agreeing to execute a stipulation reflecting the Court's ruling or both parties submitting an order for the Court to approve. Plaintiffs rejected both of these options. Apparently, Plaintiffs would like a stipulation if the Court agrees with Plaintiffs' language but not if the Court agrees with Defendant's. In light of Plaintiffs' wholly one-sided position — "a stipulation if we win but no stipulation if we lose" — Defendant believes it is fairest for the Court simply to enter of an order regardless of whether Your Honor rules for or against Defendant on this issue.

The form of the stipulation/order, and the parties' willingness to accept it, should not turn on whether Plaintiffs or Defendant prevails on this issue. Therefore, Defendant attaches herewith as Exhibit 2 its proposed confidentiality order and respectfully requests its entry.

Respectfully submitted,

/s/ Michael E. Petrella
Michael E. Petrella
O'Shea Partners LLP
Counsel for Plaintiffs

/s/ Jeffrey A. Rosenthal /RV
Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton LLP
Counsel for Defendant-Counterclaimant

*[Handwritten annotation by the Court:]*

The Confidentiality order should contain no provision allowing materials to be filed with the Court under seal without express prior showing that the standards in Lugosch 435 F.3d 110 (2d Cir. 2006) have been met. It should also recite that, notwithstanding any other provision, either party after a prompt meet and confer, may apply to the Court to have any document or category of document designated by the other side lifted from the confidentiality protection and that on such an application the party opposing the lifting of confidentiality shall bear the burden of proof. With those protections, the defendant's version of paragraph 10 is approved.

SO ORDERED.

/s/ P. Kevin Castel, USDJ
3-5-08

---

[6] After months of negotiation and reaching agreement on all but one provision, it is inappropriate for Plaintiffs to complain now that confidentiality as a general matter is disfavored. Plaintiffs' legal analysis was inserted into this letter only at the eleventh hour, but suffice it to say that Defendant believes it is inapplicable in this situation, where Plaintiffs are fine with confidentiality — as long as it is on their terms.

9